Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| BOSCH INTERNATIONAL, INC.<br><br>Parte Recurrente<br><br>v.<br><br>JUNTA DE DIRECTORES, SU PRESIDENTE, MARISOL PAGAN Y CONSEJO DE TITULARES DEL CONDOMINIO EL QUIJOTE<br><br>Parte Recurrida<br><br>DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR<br><br>Parte con interés | TA2026RA00142 | *Revisión Decisión Administrativa procedente del Departamento de Asuntos del Consumidor (DACo)*<br><br>Caso núm.: C-SAN-2024-0019391<br><br>Sobre: Condominios (Ley Núm. 129 de 16 de agosto de 2020, según enmendada) |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2026.

El 27 de marzo de 2026, Bosch International Inc., (la parte recurrente) presentó ante nos una *Revisión de decisión administrativa* en la que solicitó que revoquemos la *Resolución Sumaria* emitida el 22 de enero de 2026, notificada el 23 de enero de 2026, por el Departamento de Asuntos del Consumidor (DACo).[1]

En el aludido dictamen, el DACo declaró No Ha Lugar y ordenó el cierre y archivo de la *Querella* radicada por la parte recurrente puesto que, su representante, el señor Adrián Bosch (el señor

---

[1] Apéndice de la Revisión de decisión administrativa, Anejo 2.

Bosch), acudió a la asamblea mediante un poder y pudo ejercer su derecho al voto. Ello, pese a que no se le permitió hacer expresiones durante las asambleas celebrada por el Consejo de Titulares del Condominio El Quijote (el Consejo de Titulares).

Por los fundamentos que expondremos a continuación, confirmamos, en parte, la *Resolución* recurrida, y revocamos, en parte, la *Resolución* recurrida.

## I.

El caso de autos tuvo su origen el 28 de junio de 2024, cuando la parte recurrente presentó una *Querella* en la que alegó que, el 31 de mayo de 2024, el Consejo de Titulares celebró una Asamblea Extraordinaria en la que el señor Bosch le entregó al administrador del Condominio una copia de una resolución corporativa en la que la parte recurrente le autorizó a participar en dicha asamblea.[2] Argumentó que, al señor Bosch no se le permitió expresarse durante la asamblea debido a que no era el propietario del apartamento. En esa línea, solicitó que se declarara nulos los acuerdos de la asamblea. Particularmente, el estimado de una derrama aprobada y no se habían aprobado los estados financieros a partir del año 2021.

Luego, el 12 de agosto de 2024, la parte recurrente radicó una *Querella Enmendada* en la que reiteró que, los acuerdos aprobados en la asamblea en controversia eran nulos toda vez que, no se le permitió al señor Bosch a manifestarse con respecto a los acuerdos aprobados.[3] Ahora bien, sostuvo que, el 30 de julio de 2024, el Consejo de Titulares celebró una Asamblea Extraordinaria para la compra e instalación de un generador eléctrico para el edificio, celebrada por el Presidente y Tesorero de la Junta de Directores, quienes llevan más de tres (3) años en los puestos. Nuevamente, impugnó el estimado aprobado de una derrama.

---

[2] *Íd.*, Anejo 1.
[3] *Íd.*, Anejo 9.

Encima, el 19 de septiembre de 2025, la parte recurrente presentó una *Moción en solicitud de Resolución sumaria* en la que propuso varios hechos incontrovertidos que no impedían la disposición sumaria de la controversia.[4] La parte recurrente argumentó que, el Art. 51 de la *Ley de Condominios de Puerto Rico* (en adelante, *Ley de Condominios*), Ley Núm. 129-2020, según enmendada, 31 LPRA sec. 1921w, establece que una persona jurídica podrá designar a un representante a través de una resolución corporativa para participar de las asambleas que convoque la Junta de Directores. Arguyó que, el Consejo de Titulares y la Junta de Directores y su presidenta Marisol Pagán (en conjunto, la parte recurrida) aprobó una cuota especial a las personas que arrenden a corto plazo los apartamentos sin la debida participación de los titulares. En adición, señaló que, el 7 de noviembre de 2024, el Consejo de Titulares celebró una asamblea en la que aprobó los estados financieros de los años 2021-2023 y el presupuesto de los años 2024 al 2025. Asimismo, alegó que, la parte recurrida ha actuado contrario a la escritura matriz y la Ley de Condominios, *supra*. Por tanto, solicitó que, el DACo declarase nula las asambleas celebradas puesto que no se le permitió al señor Bosch expresarse y, solicitó la nulidad de la cuota especial impuesta por la parte recurrida con relación a los apartamentos arrendados a corto plazo.

En respuesta, el 30 de septiembre de 2025, la parte recurrida instó una *Contestación a querella enmendada del 25 de junio de 2025* en la que argumentó que, el señor Bosch no podía expresarse sobre los asuntos de la Asamblea Extraordinaria dado que compareció a esta mediante una resolución corporativa, la cual no permite que la persona realice expresiones en una asamblea.[5]

---

[4] *Íd.*, Anejo 6.
[5] *Íd.*, Anejo 7.

Empero, sí le permitió que este votara en los asuntos dilucidados en la referida Asamblea. Adujo que, el 7 de noviembre de 2024, celebró una asamblea ordinaria en la que se eligió una nueva Junta de Directores y se aprobaron los Estados Financieros de los años 2021, 2022 y 2023 y el presupuesto anual 2024-2025. A su vez, sostuvo que, se le permitió a las personas a participar durante la asamblea. No obstante, alegó que, el señor Bosch dejó de comparecer a diversas reuniones convocadas por la parte recurrida y, por tanto, actuó contra sus actos. Consecuentemente, no procedía la *Querella* instada por la parte recurrente puesto que sus reclamos eran improcedentes.

El 16 de octubre de 2025, la parte recurrida radicó una *Réplica a moción en Solicitud de Resolución Sumaria y Solicitud de Resolución Sumaria a Favor de las Partes Querelladas* en la que alegó que, la parte recurrente incumplió con los requisitos procesales establecidos en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.[6] Ello, toda vez que, no anejó los correspondientes documentos para sustentar que, las asambleas no fueron celebradas conforme a la Ley de Condominios, *supra.* Por otro lado, alegó que, el DACo debía desestimar sumariamente la controversia, en su favor, dado a que, celebró las asambleas conforme a la reglamentación aplicable y permitió al señor Bosch votar en las mismas. Así, anejó documentos sustentando la disposición sumaria de la controversia. Por tanto, adujo que no procedía desestimar sumariamente el caso con respecto a la parte recurrente y se debía resolver sumariamente en su favor.

El 22 de enero de 2026, notificada el 23 de enero de 2026, el DACo emitió una *Resolución Sumaria*[7] en la que formuló las siguientes determinaciones de hechos:

---

[6] *Íd.*, Anejo 5.
[7] *Íd.*, Anejo 2.

1. La parte querellante, A. Bosch International, LLC, es titular del apartamento 501 del Condominio El Quijote, en virtud de la escritura núm. 128 sobre compraventa, otorgada en San Juan, Puerto Rico, el 15 de abril de 2019, ante el Notario Oscar Alejandro Rodríguez Vega.

2. El Condominio El Quijote se encuentra bajo el régimen de propiedad horizontal.

3. La parte querellante es una entidad jurídica representada por su presidente, Adrián Bosch.

4. El 28 de mayo de 2024, por correo electrónico, la parte querellante le remitió al agente administrador del condominio el formulario de registro de titulares, junto a la escritura de su apartamento y una copia de resolución corporativa de la entidad jurídica A Bosch International, LLC.

5. El 31 de mayo de 2024, el Consejo de Titulares del Condominio El Quijote celebró una asamblea extraordinaria. A la mencionada asamblea comparecieron dieciséis (16) titulares, incluyendo aquellos representados por proxys y resoluciones corporativas, entre ellos, la parte querellante.

6. Según el acta de la asamblea del 31 de mayo de 2024, en dicha reunión se discutieron y quedaron aprobados los siguientes asuntos:

> a) Presentación del costo del proyecto de reparación del edificio.
> b) Presentación y aprobación de derrama para un proyecto de reparación 'y pintura.
> c) Presentación del proyecto de compra e instalación de un generador full power.
> d) Presentación y aprobación de derrama para proyecto de compra e instalación del generador full power.
> e) Aprobación de retiro del fondo de reserva para el reemplazo de la máquina de tracción.

7. Como parte de la discusión en cuanto al costo del proyecto de reparación y pintura del edificio, los titulares presentes tuvieron la oportunidad discutir dos (2) cotizaciones presentadas. Para este trabajo quedó aprobada una derrama con diez (10) votos a favor y siete (7) en contra. No se desprende del acta de la asamblea que la parte querellante haya votado en contra del proyecto y la derrama aprobada.

8. En cuanto a la discusión del proyecto de compra e instalación del generador full power, los titulares presentes discutieron la única propuesta presentada para esos trabajos. No obstante, el Consejo de Titulares pospuso la votación de la derrama propuesta para este proyecto para una asamblea a celebrarse el 30 de julio de 2024.

9. En la asamblea del 31 de mayo de 2024 solo se le permitió a la parte querellante ejercer su derecho al voto, mas no a hacer expresiones o participar de la discusión de los asuntos atendidos en dicha asamblea.

10. El 28 de junio de 2024, la parte querellante presentó ante este Departamento la querella de epígrafe para alegar que la minuta de la asamblea del 31 de agósto de 2021 no se había notificado; que con más de veinticuatro (24) de anticipación le había entregado al agente administradora una copia de resolución corporativa para autorizar al Sr. Adrián Bosch participar de la asamblea del 31 de mayo de 2024; que no se había aprobado el presupuesto anual; que desde el 31 de agosto de 2021 no se había celebrado asamblea alguna; que no se presentaron estimados para los trabajos de reparación acordados ni tampoco se presentaron estimados para la

aprobación de la derrama ni para los trabajos de reemp[l]azo de la máquina de tracción de los elevadores.

11. Los remedios solicitados originalmente en la presente querella fueron los siguientes:

> a) La celebración de una asamblea ordinaria para elegir una nueva Junta de Directores.
> b) La celebración de una asamblea ordinaria en la que se le presentara a los residentes los estados financieros desde el año 2019 en adelante.
> c) La notificación de la minuta de la asamblea celebrada el 31 de agosto de 2021.
> d) Una orden para que se le permitiera a la parte querellante participar en la discusión de los asuntos que se presentara en las asambleas, por ser un titular corporativo.
> e) Se declarara nula la derrama aprobada en la asamblea del 31 de mayo de 2024 por no haberse presentado tres (3) estimados para los trabajos de pintura y reparaciones en el condominio. (f) Se declara nulo el uso de fondo de reserva para el reemplazo de la máquina de tracción de los elevadores por no haberse presentado tres (3) estimados.
> g) La imposición de costas, gastos y horarios de abogados.

12. El 25 de julio de 2025, la Junta de Directores convocó a los titulares a una asamblea extraordinaria para la presentación de alternativas y costos del proyectó de compra e instalación del general full power para el condominio y la derrama para sufragar el costo del proyecto de referencia.

13. El 30 de julio de 2024, el Consejo de Titulares celebró una asamblea extraordinaria en donde comparecieron ocho (8) titulares, entre ellos) variostitulares1 mediante proxys o resolución corporativa. La parte querellante compareció a dicha asamblea extraordinaria a celebrarse el 30 de julio de 2024.

14. En la asamblea del 30 de julio de 2024, luego de la presentación de costos para la compra e instalación del generador full power, se aprobó una derrama con cinco (5) titulares votaron a favor y tres (3) en contra.

15. El 12 de agosto de 2024, la parte querellante enmendó la querella original para impugnar la derrama aprobada en la asamblea extraordinaria del 30 de julio de 2024 relacionada con la compra e instalación de un generador full power en el condominio por haberse presentado ante el Consejo de Titulares solo un (1) estimado de costos.

16. Además de los remedios solicitados en la querella original, la parte querellante, en su enmienda, solicitó la anulación de los acuerdos adoptados en la asamblea del 30 de julio de 2024 ya que dicha reunión había sido presidida por la misma Junta de Directores desde el 2021 y que en ese momento solo contaba de un presidente y un tesorero y que no se habían presentado tres (3) estimados de costos para el proyecto del generador eléctrico.

17. El 23 de octubre de 2024, la Junta de Directores convocó a los titulares a una. asamblea ordinaria a celebrarse el 7 de noviembre de 2024, para, entre varios asuntos, presentar y aprobar los estados financieros 2021, 2022 y 2023; presentar y aprobar el presupuesto 2024-2025; aprobar una cuota especial para los apartamentos registrados como

apartamentos de arrendamientos a corto plazo; y elegir una nueva Junta de Directores.

18. El 7 de noviembre de 2024, el Consejo de Titulares celebró la asamblea ordinaria en donde se eligió una nueva Junta de Directores, se aprobaron los estados financieros de los años 2021 al 2023 y una cuota especial para los arrendamientos de apartamentos a corto plazo y el presupuesto 2024-2025, entre otros. Esta reunión contó con nueve (9) titulares presentes, incluyendo aquellos que fueron representados por proxys o resolución corporativa.

19. La parte querellante compareció a la asamblea del 7 de noviembre de 2024 y ejerció su derecho al voto. Sin embargo, no se le permitió hacer expresiones por ser una entidad jurídica representada mediante resolución corporativa.

20. En cuanto a la aprobación de los estados financieros, surge del acta de la asamblea del 7 de noviembre de 2024 que se recibieron ocho (8) votos a favor y un (1) voto en contra. La parte querellante votó a favor de este asunto.

21. En cuanto a la aprobación del presupuesto anual surge que el resultado final fue de siete (7) votos a favor y dos (2) votos en contra. La parte querellante votó en contra de este asunto.

22. En cuanto a la aprobación de una cuota especial para los apartamentos de alquiler a corto plazo, surge que seis (6) titulares votaron a favor y tres (3) votaron en contra. La parte querellante votó en contra de este asunto.

23. En cuanto a la elección del presidente de la Junta de Directores, ocho (8) titulares votaron a favor y uno (1) votó en contra. En cuanto al tesorero de la Junta     de Directores, siete (7) titulares votaron a favor y dos (2) votaron en contra. En estos asuntos no surge cómo fue el voto de la parte querellante.

24. El 26 de junio de 2025 la parte querellante, por conducto de su representación legal presentó una segunda enmienda a la querella original para plantear que para la asamblea del 7 de noviembre de 2024, se incluyó, entre otros asuntos, la aprobación de una cuota especial para los apartamentos de arrendamientos a corto plazo y que en dicha convocatoria no se hizo alusión alguna a que, el efecto de la aprobación de dicha cuota implicaba una enmienda al Reglamento del Condominio, conforme lo establece la Ley de Condominios.

25. El 21 de julio de 2025 este Departamento autorizó la segunda enmienda a la querella de epígrafe.

26. Luego de varios trámites procesales, ambas partes sometieron sus respectivos escritos para que la querella ante nuestra consideración se resolviera sumariamente.

27. La parte querellante, en su petición de resolución sumaria a su favor planteó que la parte querellada actuó ilegal y de manera acomodaticia al prohibirle a la parte querellante realizar expresiones en las asambleas celebradas en el condominio, a pesar de dicha parte presentarse por medio de un representante designado mediante resolución corporativa. Adicional, planteó que dicha parte querellada actuó de manera ilegal al haber impuesto una cuota especial a los apartamentos que arrienda a corto plazo, acordado por mayoría en asamblea, en lugar de esta haberse aprobado como una enmienda en el reglamento del condominio, conforme lo requerido por la Ley de Condominios.

28. La parte querellada, en su escrito, sostiene que la parte querellante no tenía derecho a cuestionar las determinaciones del Consejo de Titulares debido a que el formulario de Registro de Titulares entregado por la querellante el 28 de mayo de 2024 no incluía toda la información requerida bajo el Artículo 37 de la Ley de Condominios. Adicional, planteó que la parte querellante no tenía derecho a hacer expresiones en las asambleas celebradas y solo a ejercer su derecho al voto por comparecer mediante voto por representación. Establece la parte querellada que la participación de una persona jurídica mediante resolución corporativa está definida en la Ley de Condominios como un voto por representación. En cuanto a la asamblea del 7 de noviembre de 2024, sostuvo la parte querellada que la reclamación de la parte querellante estaría prescrita toda vez que no impugnaron las determinaciones de dicha asamblea dentro del término de los 30 días establecidos en la Ley de Condominios y su reglamento.

El DACo razonó que, se tornó académica la controversia con relación a su reclamo en celebrar una elección de una nueva Junta de Directores puesto que esta fue celebrada. Ahora bien, el organismo administrativo determinó que, no se le podía limitar al señor Bosch a hacer expresiones debido a que la limitación de hacer expresiones surge cuando una persona comparece mediante un poder representando a una persona natural. Ahora bien, resaltó que, no se le negó el derecho al voto a la parte recurrente. Ante ello, no alteró los resultados de las votaciones de las asambleas celebradas por la parte recurrida. Igualmente, resolvió que, la parte recurrida no tenía que enmendar su reglamento para que se pudiera aprobar la cuota especial impuesta a los apartamentos de arrendamiento a corto plazo. Consecuentemente, el DACo declaró No Ha Lugar la *Querella* presentada por la parte recurrente.

Surge del expediente que, el 11 de febrero de 2025, la parte recurrente, radicó una *Moción en solicitud de reconsideración* en la que insistió que, el no permitirle al señor Bosch expresarse, afectó el resultado de las determinaciones de la asamblea debido a que no pudo persuadir a otros titulares.[8]

Transcurrido el término para que el organismo administrativo atendiera la *Moción en solicitud de reconsideración*, la parte

---

[8] *Íd.*, Anejo 4.

recurrente presentó ante nos una *Revisión de decisión administrativa* en la que coligó los siguientes señalamientos de errores:

>  Primer Error: Erró el Honorable Departamento de Asuntos del Consumidor (DACO) al concluir que no procede la anulación de las asambleas en las que se le prohibió hacer uso de expresión y/o propuestas a los titulares que son entidades jurídicas (representadas por Resolución Corporativa).

>  Segundo Error: Erró el Honorable Departamento de Asuntos del Consumidor (DACO) al utilizar una mera especulación de que los resultados de las votaciones en dichas asambleas (en las que no se les permite expresión a titulares) no hubieran cambiado aun si no se hubiera cometido dicha ilegalidad.

>  Tercer Error: Erró el Honorable Departamento de Asuntos del Consumidor (DACO) al especular y concluir que una votación es el equivalente a otorgarle a titular una oportunidad de persuadir a otros, aun cuando no se le permite expresarse.

En cumplimiento con nuestra *Resolución*, el 5 de mayo de 2026, la parte recurrida instó un *Alegato en oposición de la parte recurrida.*

Con el beneficio de la comparecencia de las partes, procederemos a resolver el recurso ante nos.

## II.

## A.

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero* v. *Toyota*, 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025), *Otero* v. *Toyota, supra*, pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada

mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior*, 120 DPR 194, 210 (1987). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota de P.R. Corp.,* 163 DPR 716, 727-728 (2005); *Domingo v. Caguas Expressway Motors,* 148 DPR 387, 397 (1999). En virtud de lo anterior, el criterio rector al momento de pasar juicio sobre una decisión de la agencia recurrida es la razonabilidad de la actuación cuestionada. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan, supra.* Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el expediente administrativo. *Vázquez v. Consejo de Titulares,* 216 DPR ___ (2025), 2025 TSPR 56. Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. *Otero* v. *Toyota, supra,* pág. 728. El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra*, pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que

sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra*, pág. 728. La parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto de que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitan S.E. v. A.R.P.E.*, 138 DPR 200, 213 (1995) citando a *Hilton Hotels v. Junta de Salario Mínimo*, 74 DPR 670, 686 (1983).

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra*, pág. 728; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra*, pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra*, pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra*, pág. 728.

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez v. Consejo de Titulares, supra*. La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las

conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares, supra*. Ello, como mecanismo interpretativo del poder judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota, supra*, pág. 729. Por consiguiente, no puede otorgárseles un "sello de corrección automático bajo el pretexto de deferencia a aquellas determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a Derecho". *Capote Rivera v. Voilí Voilá Corp.*, 213 DPR 743, 754 (2024). Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Otero v. Toyota, supra*, pág. 729. Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota*, 163 DPR 716, 730 (2005); *Capote Rivera v. Voilí Voilá Corp., supra*, pág. 754, citando a *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Por otro

lado, las determinaciones de derecho, el tribunal tiene amplia autonomía para revisarlas en todos sus aspectos. *Rebollo* v. *Yiyi Motors, supra*, pág. 77.

**B.**

El Art. 2 de la *Ley de Condominios de Puerto Rico* (en adelante, *Ley de Condominios*), Ley Núm. 129-2020, 31 LPRA sec. 1921a, establece que, la ley se aprobó con el propósito, entre otros, de viabilizar la propiedad individual sobre un apartamento, que forma parte de un edificio o inmueble sometido al Régimen de Propiedad Horizontal. La *Ley de Condominios* provee mecanismos para los conflictos inevitables que surgen del *modus vivendi* bajo un régimen de propiedad horizontal. *Srio. D.A.C.O.* v. *J. Condóminos C. Martí*, 121 DPR 807, 814 (1988). Asimismo, otro propósito que tiene la ley es la creación de un marco organizacional de un gobierno interno y canalizar los problemas de la vida comunitaria. *Íd.*, pág. 815. La ley detalla el marco organizacional del gobierno interno, cuyo organismo rector y deliberativo es el Consejo de Titulares que a su vez rige, según la Ley de Propiedad Horizontal, la escritura matriz y el reglamento. *Íd.*

De otra parte, la Junta de Directores es el órgano ejecutivo que dirige (o la persona, en caso del Director), y supervisa la gestión administrativa del edificio de acuerdo a las directrices contenidas en la escritura, en el Reglamento y en los acuerdos del Consejo de Titulares. M. J. Godreau, *El condominio: el régimen de propiedad horizontal en Puerto Rico*, 3era ed., San Juan, PR, Ediciones SITUM, 2023, pág. 235. La responsabilidad fundamental de la Junta de Directores es velar por el buen funcionamiento de los condominios logrando que se ejecuten las disposiciones de la ley, de la Escritura Matriz, del Reglamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares. *Consejo de Titulares* v. *Gómez Estremera et*

*al.,* 184 DPR 407, 418 (2012). Como parte de las funciones del Consejo de Titulares es velar por el mantenimiento de los techos que es un elemento común general. *Consejo de Titulares Cond. McKinley v. Rullán,* 126 DPR 387 (1990). Ello, el Consejo de Titulares es el responsable de la conservación y reparación de los techos al ser un elemento común. M. Godreau, *El condominio: El régimen de propiedad horizontal,* 2a ed., San Juan, Ed. Situm, 2019, págs.163-166.

La *Ley de Condominios* le encomendó a DACO la rápida adjudicación de reclamos de los condómines relativos a la administración del edificio. *Consejo de Titulares* v. *Gómez Estremera et al.*, supra, pág. 420. Se puede presentar ante DACO, las acciones de impugnación de los acuerdos del Consejo de Titulares, de las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores, relacionadas con la administración de inmuebles que comprendan por lo menos un apartamento destinado a vivienda. *Amil v. J. Dir. Cond. Pumarada*, 156 DPR 495, 500 (2002).

El Artículo 65 de la *Ley de Condominios*, 31 LPRA sec. 1923j, dispone un término para impugnar las acciones de la Junta de Directores y determinaciones del Consejo de Titulares. Dicho artículo expresa que:

> Las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador así como los acuerdos del Consejo de Titulares podrán ser impugnados por los titulares en los siguientes supuestos:
>
> (a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;
>
> (b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;
>
> (c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.
>
> Los titulares que sean dueños de apartamentos en condominios que sean dedicados exclusivamente a uso comercial, tendrán que presentar la impugnación ante el Tribunal de Primera Instancia, el cual tendrá jurisdicción

primaria y exclusiva. En el caso de los titulares sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor, así como cualquier reclamación presentada en contra del agente administrador.

**Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.**

En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares, constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años. El término se computará a partir de la fecha en que se tomó la acción, omisión o acuerdo si fue en la presencia del titular o a partir de la notificación de este si no fue en su presencia. El acuerdo tiene que haberse notificado conforme a las disposiciones de esta Ley.

(...)

El término para ejercer la impugnación dependerá del supuesto bajo el que se presente. Si se trata de una impugnación de acuerdos, acciones u omisiones que constituyan una violación a la *Ley de Condominios, supra*, la acción prescribirá a los dos (2) años. Cónsono con lo anterior, la Regla 23 del *Reglamento de Condominios*, Reglamento Núm. 9386, pág. 19 (Reglamento Núm. 9386) establece que:

Las acciones u omisiones de la Junta de Directores, Administrador Interino, Agente Administrador, Sindico, así como los acuerdos del Consejo de Titulares podrán ser impugnados ante el Departamento por los titulares en los siguientes supuestos:
(a) Cuando sean contrarios a la Ley de Condominios de Puerto Rico, la escritura matriz, el reglamento del condominio y a este Reglamento.
(b) Cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular.
(c) Cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.

En lo pertinente a la controversia, el Art. 17 (a) (7) de la Ley de Condominios, *supra* sec. 1921p, establece que, un generador eléctrico que supla la demanda de áreas comunes, privadas para servir a la infraestructura eléctrica del condominio, como elemento

común general. Si la instalación del generador suple a las áreas comunes, será considerado como una obra necesaria. *supra* sec. 1921p. Con ello, las obras necesarias para la conservación de un inmueble deben ser aprobadas por la mayoría de los titulares. Art. 18 de la Ley de Condominios, *supra* sec. 1921q.

En otros términos, toda obra extraordinaria, es aquella no prevista en el presupuesto anual y requiera la imposición de una derrama para su ejecución. Art. 3 (r) de la Ley de Condominios, *supra* sec. 1921b. Dicha obra puede ser costeada con retiros del fondo de reserva, previa autorización del Consejo de Titulares mediante la celebración de una asamblea extraordinaria. Art. 49 de la Ley de Condominios, *supra* sec. 1922u.

### III.

En el caso de epígrafe, la parte recurrente argumentó que, el DACo erró al no anular las asambleas celebradas puesto que se le prohibió hacer expresiones durante estas. Pese a que, el señor Bosch pudo votar en representación de la parte recurrente, arguyó que, no se le permitió expresarse con respecto a los asuntos dilucidados en las asambleas y, por tanto, la parte recurrida actuó contrario a la Ley de Condominios, *supra*.

Por estar relacionados los señalamientos de error, procederemos a discutirlos en conjunto.

Es sabido que, este Tribunal de Apelaciones debe brindarle deferencia a las determinaciones de hechos que esbozan las agencias administrativas. En reiteradas ocasiones, este Tribunal ha resuelto que no intervendremos en las determinaciones de hechos de una agencia, salvo que la determinación administrativa no esté basada en evidencia sustancial; el organismo administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; si la agencia administrativa actuó de forma arbitraria, irrazonable o ilegalmente, formulando

determinaciones carentes de una base racional. De lo contrario, debemos abstenernos en modificar las determinaciones de hechos que formule el ente administrativo toda vez que, el foro administrativo fue quien tuvo ante su consideración la prueba desfilada.

A tenor con el marco jurídico expuesto, la Ley de Condominios, supra, fue creada en aras de organizar una estructura de gobierno para atender los asuntos y reclamos de los titulares. Con ello, el Consejo de Titulares es el grupo de condómines que se encarga del buen funcionamiento del condominio sometido al régimen de propiedad horizontal. A esos efectos, el Consejo de Titulares le delega la administración de los asuntos relacionados al régimen de propiedad horizontal a la Junta de Directores. Ahora bien, el Art. 65 de la Ley de Condominios, *supra* sec. 1923j, un condómine tiene treinta (30) días, a partir de la determinación del acuerdo, para impugnar dicho acuerdo. En otros términos, un generador eléctrico es un elemento común, siempre y cuando supla energía a áreas comunes. En adición, cuando el generador eléctrico supla energía a las áreas comunes, haciendo uso de infraestructura eléctrica del condominio, será considerado como una obra necesaria.

En lo pertinente, es meritorio resaltar que, toda obra extraordinaria, puede ser costeada con retiros del fondo de reserva, con la anuencia del Consejo de Titulares mediante la celebración de una asamblea extraordinaria. Art. 49 de la Ley de Condominios, *supra* sec. 1922u. En virtud de que es una obra de mantenimiento no contemplada en el presupuesto anual. *supra* sec. 1922u.

Luego de un análisis detallado del expediente ante nuestra consideración y evaluar minuciosamente el lenguaje de la *Ley de Condominios, supra*, resolvemos que debemos confirmar en parte y revocar en parte la *Resolución* recurrida. Veamos.

Surge que, la parte recurrente es propietaria de un apartamento sometido al régimen de propiedad horizontal. Así las cosas, el Consejo de Titulares decidió convocar unas asambleas para atender varios asuntos relacionados al funcionamiento del condominio. El **28 de junio de 2024**, la parte recurrente instó una *Querella* en la que impugnó que, durante la asamblea celebrada el **31 de mayo de 2024**, se aprobó la cotización de una derrama y no se aprobó los estados financieros del Condominio El Quijote desde el 2021.

Luego, el **12 de agosto de 2024**, la parte recurrente radicó una *Querella enmendada* en la que adujo que, el **30 de julio de 2024**, fue celebrada una Asamblea Extraordinaria en la que se aprobó la compra de un generador eléctrico para la infraestructura del condominio y no se vieran afectadas las personas que destinen sus apartamentos para arrendamientos a corto plazo. Encima, nuevamente cuestionó la aprobación de la derrama y la falta de aprobación de los mencionados estados financieros.

Ante este cuadro fáctico, denotamos que la parte recurrente cumplió en presentar las querellas dentro del término prescriptivo de treinta (30) días desde la celebración de las asambleas al amparo del Art. 65 de la Ley de Condominios, *supra* sec. 1923j. Ahora bien, con respecto al reclamo de la parte recurrida sobre los estados financieros, dicho reclamo se tornó académico. Ello, en virtud de que surge del expediente que, la parte recurrida celebró una asamblea el 7 de noviembre de 2024, en la que aprobó los estados financieros desde el 2021 y el presupuesto de los años 2024 y 2025. En cuanto a su reclamo sobre la cotización de la derrama esta fue aprobada por la mayoría de los titulares conforme el Art. 49 de la *Ley de Condominios, supra* sec. 1922u. Cónsono con lo anterior, surge de los documentos ante nos que, se empleó un porcentaje del fondo de reserva y los titulares acordaron aportar una cantidad por

versar sobre una obra de mantenimiento para pintar y reparar el edificio. Es decir, la obra de mantenimiento fue aprobada por una mayoría de los titulares debido a que era una obra de mantenimiento necesaria para mantener en condiciones óptimas el condominio. Igualmente, fue costeada por unos acuerdos consentidos por la mayoría de los titulares y al palio del Art. 49 de la Ley de Condominios, *supra* sec. 1922u. Es meritorio señalar que, una obra extraordinaria no requiere una votación unánime de los titulares. A tenor con lo anterior, el Consejo de Titulares celebró una asamblea en la que aprobó la compra de un generador eléctrico para la infraestructura del Condominio El Quijote. Resaltamos que, la compra de un generador eléctrico es una obra necesaria que solo requiere una fracción de los titulares para su aprobación, es decir no de forma unánime. Ante ello, la compra del generador eléctrico fue aprobada conforme a los titulares requeridos al amparo de la *Ley de Condominios, supra.* Consecuentemente, no procede los reclamos alegados por la parte recurrente toda vez que, los acuerdos previamente esbozados fueron aprobados por la mayoría de los titulares requeridos al palio de la *Ley de Condominios, supra.* Vale destacar que, al señor Bosch no se le permitió expresarse durante las asambleas celebradas pese a que compareció mediante una resolución corporativa. Empero, el señor Bosch pudo ejercer su derecho al voto durante las asambleas previamente descritas. Al respecto, denotamos que, tanto el generador eléctrico como la cuota de la derrama fue aprobada por la mayoría de los titulares, por lo que intervenir en dicha determinación acarrea que alteremos las mejoras realizadas y los acuerdos adoptados en las referidas asambleas. Ello, en un sano ejercicio de no socavar los intereses de los titulares que han aportado dinero para la obra de mantenimiento y la compra del generador eléctrico. Consecuentemente, confirmamos la *Resolución* recurrida con relación a mantener en

vigor los acuerdos aprobados en las Asambleas celebradas el 31 de mayo de 2024 y el 30 de julio de 2024.

Por otra parte, el DACo resolvió que, la parte recurrente impugnó los acuerdos aprobados en la asamblea celebrada **el 7 de noviembre de 2024** dentro del término de dos (2) años conforme el Art. 65 de la Ley de Condominios, *supra* sec. 1923j. Sin embargo, no le asiste la razón en cuanto a dicho razonamiento. La parte recurrente debió presentar dentro del término de treinta (30) días una querella en la que impugnara los acuerdos celebrados en la asamblea del 7 de noviembre de 2024. Con ello, la parte recurrente esbozó sus argumentos para que el DACo decretara nula la asamblea en cuestión el **19 de septiembre de 2025** cuando presentó una *Moción en solicitud de Resolución Sumaria.* Consecuentemente, el DACo asumió ostentar jurisdicción cuando palmariamente surge que, fue radicada la impugnación fuera del término estatutario de treinta (30) días. Atisbamos que, tampoco intervendremos en los méritos de los acuerdos aprobados en la referida asamblea toda vez que, también carecemos de jurisdicción. Por tanto, revocamos lo resuelto por el DACo con respecto a intervenir en dilucidar los acuerdos pactados en la asamblea del 7 de noviembre de 2024, toda vez que, la *Moción en solicitud de Resolución Sumaria* fue presentada pasado el término de treinta (30) días conforme el Art. 65 de la Ley de Condominios, *supra.*

A la luz de los fundamentos expuestos, confirmamos en parte, la *Resolución* recurrida, puesto que la parte recurrida cumplió en aprobar con los votos requeridos y la normativa aplicable, los asuntos dilucidados en las asambleas celebradas el 31 de mayo de 2024 y el 30 de julio de 2024. A su vez, revocamos, en parte la *Resolución* recurrida en virtud de que carecía de jurisdicción para intervenir en los méritos de los asuntos dilucidados en la asamblea

celebrada el 7 de noviembre de 2024. Por tanto, dejamos sin efecto lo resuelto por el DACo con respecto a ello.

**IV.**

A la luz de los fundamentos que anteceden, confirmamos en parte, y revocamos, en parte la *Resolución* recurrida.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Rivera Marchand y la Jueza Mateu Meléndez concurren sin escrito. La Jueza Boria Vizcarrondo disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones